HIGGINBOTHAM, J.
*327 Appellant, KT, the biological mother of the minor child (KB) appeals from the trial court judgment granting the intrafamily adoption of KB by his paternal aunt and her husband (Mr. and Ms. Z).
FACTS AND PROCEDURAL HISTORY
On March 12, 2012, KB was born to appellant, and KB lived with her and her boyfriend. When appellant was arrested and incarcerated in October of 2013, KB was in the care of appellant's sister and appellant maintained some contact with KB. Around July 2014, the child, KB was removed from the care of appellant's sister by the Louisiana Department of Children and Family Services, and placed in the custody of his paternal grandparents, the parents of KB's biological father, MB. A judgment was signed on September 23, 2014, granting custody of KB to his paternal grandparents. In August 2016, KB began to reside with his biological father's sister, Mrs. Z, and her husband, Mr. Z. KB's paternal grandparents voluntarily transferred custody of KB to Mr. and Mrs. Z by a consent judgment signed on November 16, 2016.
On February 24, 2017, Mr. and Mrs. Z filed a petition for intrafamily adoption of KB. Attached to their petition were: (1) KB's birth certificate that showed appellant was married at the time of KB's birth and listed SN as his father; (2) a judgment of filiation and paternity signed on September 20, 2016 ordering that "the filiation and paternity of [KB] shall be established in favor of [MB] and that [SN] is hereby adjudged not to be the father of [KB]"; (3) the judgment voluntarily transferring custody of [KB] to Mr. and Mrs. Z; and (4) an act of consent signed by MB giving his consent to the adoption of KB by Mr. and Mrs. Z. The petition of Mr. and Mrs. Z was served to appellant at the Louisiana Correctional Institute for Women. Appellant opposed the adoption, and the matter came before the trial court on July 27, 2017.
At the hearing on the matter, the trial court heard from various witnesses, and ultimately determined that the adoption by Mr. and Mrs. Z did not require appellant's consent and was in KB's best interest. After the hearing, the trial court signed a judgment on August 7, 2017, finding that the proposed adoption was in the best interest of the child and granting Mr. and Mrs. Z's request to adopt KB.
It is from this judgment that appellant appeals assigning the following assignments of error: (1) the trial court erred in granting the intrafamily adoption because the petitioners, who are the biological father's sister and her husband, were not authorized to petition for intrafamily adoption of KB since the biological father was never legally filiated to the child, and (2) the trial court erred in deciding that appellant's consent was not necessary for the adoption.
LAW AND ANALYSIS
Under La. Ch. Code art. 1243, a sibling of a father who is filiated to the child in accordance with the Civil Code is authorized to petition the court for an intrafamily adoption. Louisiana Children's Code article 1243(A) provides in pertinent part:
*328 A stepparent, stepgrandparent, great-grandparent, grandparent, or collaterals within the twelfth degree may petition to adopt a child if all of the following elements are met:
(1) The petitioner is related to the child by blood, adoption, or affinity through the mother of the child or through a father who is filiated to the child in accordance with the Civil Code.
(2) The petitioner is a single person over the age of eighteen or a married person whose spouse is a joint petitioner.
(3) The petitioner has had legal or physical custody of the child for at least six months prior to filing the petition for adoption.
Generally, a parent's consent is required for an intrafamily adoption. However, La. Ch. Code art. 1245 provides that the consent of a parent may be dispensed with upon proof by clear and convincing evidence that a petitioner authorized by article 1243 has been granted custody of the child by a court of competent jurisdiction and "[t]he parent has refused or failed to visit, communicate, or attempt to communicate with the child without just cause for a period of at least six months." The party petitioning the court for adoption carries the burden of proving a parent's consent is not required under the law. In re J.A.B. , 2004-1160 (La. App. 1st Cir. 9/17/04), 884 So.2d 678, 681, writ denied, 2004-2963 (La. 12/14/04), 888 So.2d 848.
In her first assignment of error as well as in a separate exception filed in this court on January 31, 2018, appellant contends that Mr. and Mrs. Z had no right of action for intrafamily adoption because the first element necessary for an intrafamily adoption, a father who is filiated to the child in accordance with the Civil Code, is not met since the judgment of filiation and paternity of [KB] established in favor of [MB] is null. Appellant argues that under La. Civ. Code art. 198, MB's filiation action was not timely because KB was over one year old and presumed to be the child of SN, her husband at the time of KB's birth. Article 198 provides in pertinent part:
A man may institute an action to establish his paternity of a child at any time except as provided in this Article. The action is strictly personal.
If the child is presumed to be the child of another man, the action shall be instituted within one year from the day of the birth of the child. Nevertheless, if the mother in bad faith deceived the father of the child regarding his paternity, the action shall be instituted within one year from the day the father knew or should have known of his paternity, or within ten years from the day of the birth of the child, whichever first occurs.
Additionally, article 197 provides in pertinent part: "A child may institute an action to prove paternity even though he is presumed to be the child of another man. If the action is instituted after the death of the alleged father, a child shall prove paternity by clear and convincing evidence." The one-year time limit for bringing a paternity action under this Article is limited to succession matters only. See La. Civ. Code art. 197, 2005 Official Revision Comment (e).
Louisiana Code of Civil Procedure article 2163 provides "[t]he appellate court may consider the peremptory exception filed for the first time in that court, if pleaded prior to a submission of the case for a decision, and if proof of the ground of the exception appears of record." Appellant did not attack the validity of the filiation judgment in the trial court and therefore did not submit any proof in the record that the filiation judgment was null. The usual procedure to annul a judgment is to bring a direct action in the trial court.
*329 La. Code Civ. P. art. 2006 ; G R Constr. & Renovation, LLC v. White, 2014-62 (La. App. 5th Cir. 5/21/14), 142 So.3d 207, 209. However, where the judgment at issue is an absolute nullity, it may be attacked in direct or collateral proceedings at any time and before any court. Id. In order for an appellate court to consider the merits of a collateral attack based on a vice of form, the defect raised must be apparent on the face of the record. See Fouchi v. Fouchi, 442 So.2d 506, 508 (La. App. 5th Cir. 11/9/83), writ denied, 445 So.2d 1235 (La. 2/27/84). Additionally, the appellate court cannot grant a peremptory exception of no right of action unless proof of the grounds of the exception appears of record. See La. Code Civ. P. art. 2163.
There is nothing on the face of the record that discloses the judgment of filiation and paternity to be an absolute nullity. Although it is discussed in the appellate briefs, the record before us does not indicate when the action for filiation was filed, whether it was MB or KB that filed the filiation action, and if it was MB whether his action was timely filed, whether there was any alleged bad faith on the part of appellant, or when MB discovered that he was the biological father of KB. Therefore, we cannot conclude that the first element for intrafamily adoption was not met, and overrule appellant's exception of no cause of action.
In her second assignment of error, appellant contends that the trial court erred in concluding that her consent was not necessary for the adoption, because under La. Ch. Code art. 1245 her consent cannot be dispensed with since the judgment awarding physical custody of KB in favor of Mr. and Mrs. Z is invalid. Specifically, she contends that the voluntary transfer of custody of KB from his paternal grandparents to Mr. and Mrs. Z was an improper mechanism for grandparents to transfer legal custody of KB, because the article provides the purpose of a voluntary transfer is to provide "for juvenile court procedure to govern a voluntary transfer of custody of a child by parents to other responsible adults."
KB's paternal grandparents were awarded legal custody of him in a judgment signed on September 23, 2014. At the time of the voluntary transfer of custody, KB's paternal grandparents were the only legal custodians of KB, and the judgment noted the transfer of custody appeared to be in the best interest of KB. After review of the judgment awarding custody of KB to Mr. and Mrs. Z, we find the judgment attached to the petition of Mr. and Mrs. Z satisfies the requirements of La. Ch. Code art. 1245 that the petitioners have "been granted custody of the child by a court of competent jurisdiction."
Appellant also argued that the voluntary transfer of custody was invalid because she was not served with notice of the proceedings. Like the judgment of filiation, whether the voluntary transfer of custody judgment was null was not apparent from the record; therefore, we cannot consider that issue on appeal. See Fouchi, 442 So.2d at 508.
In the alternative, appellant argues that even if the custody transfer was valid, her consent was required because she had not refused to visit, communicate, or attempt to communicate with the child for a period of at least six months. Since October 13, 2013, appellant has been incarcerated. During that time, KB's paternal grandmother who had custody of KB from July 2014 until August 2016, testified that she was contacted by appellant two times regarding KB; (1) right after she had custody of KB, she was given some paperwork so that KB could see appellant, and (2) she once received a letter and birthday card for KB from appellant. She testified that she never received any emails or calls from appellant. Mrs. Z testified that since *330 KB began living with her in 2016, appellant has made no contact with her or her husband. Appellant said she wrote letters, and sent cards and pictures to the address of KB's paternal grandparents.
After listening to the witnesses' testimony and reviewing the evidence submitted, the trial court concluded "I don't find that parental consent is necessary in this case. I don't think that ... [appellant] has communicated or attempted to communicate with the child for a period of six months." We find no error in the trial court's conclusion that appellant's consent to the adoption was not necessary based on her failure to communicate with KB for a period of at least six months.
CONCLUSION
For the foregoing reasons, the judgment of the trial court granting the intrafamily adoption of KB by his paternal aunt and her husband Mr. and Mrs. Z is affirmed, and appellant's exception of no right of action is overruled. All costs of the appeal are assessed to appellant.
AFFIRMED; EXCEPTION OF NO RIGHT OF ACTION OVERRULED.